DAVIS, ADMX., APPELLEE, *v.* THE NEW YORK CENTRAL RD. CO., APPELLANT.*

---

*Motion to certify the record overruled, June 19, 1957.

(No. 2395—Decided March 14, 1957.)

*Mr. Horace W. Baggott* and *Messrs. Baver & Doan,* for appellee.

*Messrs. Estabrook, Finn & McKee, Mr. Harry L. Lawner* and *Mr. Richard E. Pryor,* for appellant.

HORNBECK, P. J. This is an appeal on questions of law from a judgment for plaintiff against the defendant in the amount of $12,000. A jury had returned a verdict for plaintiff for the sum of $16,000, upon which a remittitur of all over $12,000 was ordered and accepted.

Defendant, appellant herein, assigns 13 errors.

The action was instituted by the administratrix of the estate of Mamie Hollingsworth for damages for wrongful death suffered when an automobile in which she was riding as a passenger was struck by a locomotive operated by defendant company. The collision occurred at a crossing of defendant company a short distance north of the city limits of Miamisburg. There were four tracks at the crossing, two main and two switch tracks, the latter being on the outside of the main tracks. Orchard Hill Drive is a thoroughfare running east and west and intersecting defendant's crossing at right angles. The tracks and right of way of defendant company run in a general northerly and southerly direction at the crossing, but curve to the east on both sides thereof. Plaintiff's decedent, to whom we hereinafter refer as "decedent," lived on Orchard Hill Drive about 600 feet from the crossing. She was a passenger in a Ford pick-up truck which was moving westwardly towards and onto the crossing. Decedent was seated to the right, on the left was the driver, her husband, Abram Hollingsworth, and seated between them was their grandson. The automobile had passed two of the tracks of defendant to the east and was struck on the third track. All occupants of the automobile were killed. The train which struck the automobile in which decedent was riding was moving southwardly.

Plaintiff, in her amended petition, sets up five specifications of negligence: (1) failure to give warning of the approach of the train to the crossing by sounding bell or whistle; (2) failure to maintain a watchman, gates, flashing lights or signal bell at the crossing, although known by defendant to be more than ordinarily hazardous in nature; (3) negligently permitting weeds and shrubbery to grow up on its right of way and to obscure the view of plaintiff at the crossing and the right of way to the north of the driver of the car; (4) excessive speed under the circumstances existing at the crossing; and (5) failing to keep surface of crossing in repair.

The answer of defendant denies any negligence on its part and avers that decedent was acquainted with all conditions at the crossing where she was killed and, in the exercise of ordinary care for her own safety, should have known of the approach of the train which collided with the automobile in which she was riding in time to have caused it to be stopped before crossing the tracks, and that her failure to so act caused or contributed to cause the collision resulting in her death.

Counsel have briefed the assignments of error categorically and at length, with citation of many authorities. The trial of this case placed a heavy responsibility on counsel and the trial judge. The parties presented their evidence in detail, and counsel were unusually careful in guarding the rights of their clients, resulting in a record of 670 pages and 38 exhibits. When the parties had rested, and before argument, plaintiff requested that nine special charges be given to the jury. All were given. Defendant requested seventeen; fourteen were given. Thus, 23 special instructions before argument, some quite lengthy, were given to the jury. The general charge was 38 pages in length. Five special interrogatories were submitted to the jury, three of which were answered.

Appellant assigns 13 errors. Five of them—1, 2, 7, 9 and 11—relate to the same subject matter in various aspects.

Number 1 is directed to the admission of certain evidence of the plaintiff of obstructions along the right of way of defendant to the south of Orchard Hill Drive at the crossing, the opposite direction from that towards which the oncoming train would be viewed by the occupants of the automobile in which plaintiff's decedent was riding.

Number 2 claims error in permitting plaintiff to amend her amended petition to conform to the foregoing proof.

The paragraph in which the amendment was inserted reads (amendment in brackets):

"The plaintiff says that by reason of the closely built up residential section, where this intersection is located, the amount and speed of railroad traffic over said crossing, freight, passenger and switching, the curved trackage, the view obscured by the existence of the embankment, the rough surface of the crossing, and the obstructions to view, permitted by the defendant to grow up within its right-of-way [and the objects erected by the defendant within its right-of-way] that this was a crossing of more than ordinary hazard."

The seventh assignment is directed to plaintiff's special charge No. 7, given before argument:

"Under normal circumstances there is little or no restriction with respect to the speed of a railroad train in the open country, but within a populous area the speed must be such as is commensurate with the exercise of ordinary care to prevent harm. Speed taken in connection with other facts and surrounding circumstances existing at a crossing may become an element or factor in constituting negligence. Evidence has been introduced in this case concerning the objects erected by the railroad within its right-of-way, the effect of weeds within the right-of-way upon the view of the crossing, the number of residences located in the area, the curved trackage of the railroad, and the condition of the surface of the crossing. If you find from a preponderance of the evidence that these conditions existed at this crossing you may then consider whether the speed of the train as established in the evidence was greater than reasonable and proper under those circumstances, and if you find that it was, and that such speed was the proximate cause of the death of the decedent, to which she did not proximately contribute by any negligence on her part, your verdict should be for the plaintiff."

The ninth is directed to the refusal to give defendant's Special Charge No. 23 before argument, as follows:

"The court instructs you that you are to disregard any obstructions to view on the west side of the Orchard Hill Drive crossing relating to vehicles approaching from the west."

The eleventh is directed to the general charge, and particularly this language appearing in the record:

"If the evidence tends to establish the crossing is one of more than ordinary hazard for one approaching and making the crossing from the west to the east, this fact does not establish the crossing as one of more than ordinary hazard to one approaching and making a crossing from the east to the west, *although such fact may have some general bearing, and may be taken into consideration.*" (Emphasis ours.)

It is the contention of defendant that no evidence whatever was admissible as to physical conditions of the crossing to the south of its intersection with Orchard Hill Drive, and that the court, in the emphasized language above quoted from the record, was not exact enough in defining the purpose for which this evidence could be considered by the jury.

As to this latter contention, it was the obligation of counsel to request such further elucidation as he felt proper, and the charge may not be questioned if correct so far as announced.

Upon the principal error urged in the other assignments, we hold that the rulings were correct in all instances. The procedure adopted conformed to the principle announced in the first paragraph of the syllabus of the leading case of *Railway Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321.

"1. Where a railroad company uses the tracks of its road across a generally traveled public street in a populous town or city, for its convenience in the switching of trains, cars and locomotives, and the crossing is thereby rendered exceptionally dangerous, it is bound to exercise care proportioned to the increased danger arising from such use of its tracks, to avoid injury to persons using the crossing, and should, in the exercise of such care, as a reasonable precaution for their safety, and means of preserving the legitimate uses of the street, maintain flagmen, or gates and gatemen, at such crossing, or adopt other equally adequate measures for that purpose."

This case has not been modified by any later decision and has been followed many times by lower courts, and twice by the Supreme Court, in *Woodworth, Admx.,* v. *New York Central Rd. Co.,* 149 Ohio St., 543, 551, 80 N. E. (2d), 142, and *Weaver* v. *Columbus, Shawnee & Hocking Ry. Co.,* 76 Ohio St., 164, 81 N. E., 180. In this latter case, Chief Justice Shauck had this to say

as to the obligation of the railroad in the given situation, at page 176 of the opinion:

"These signals [by bell and whistle] are required at grade crossings in the open country, and the elementary rule that the degree of care to be exercised is determined by the danger to be apprehended should require additional precaution when the crossing is in a denser population and when structures maintained near the track obscure the view of approaching trains."

Defendant cites *Tanzi* v. *New York Central Rd. Co.,* 155 Ohio St., 149, 98 N. E. (2d), 39, 24 A. L. R. (2d), 1151, in the opinion of which Judge Taft, at page 155, made some observations as to the duty of a railroad company respecting hazardous crossings. The subject matter of these observations is not carried into the syllabus of the case, but we have no difficulty in reconciling them with the action of the trial court respecting the admission of the evidence in this case. Judge Taft was considering the responsibility of the railroad company for hazardous conditions which might arise at certain times or under certain circumstances, and it is pointed out that the rate of speed at which the train was moving in the *Tanzi case* was slow and that the locomotive headlight was burning brightly. It also appeared, according to Judge Taft, that traffic approaching from the south had a clear view to the northeast. The physical obstructions in this case were not subject to change because of time or circumstance. They were fixed.

The evidence tending to show the crossing to be hazardous was admissible and the full picture of physical conditions on both sides of the crossing, as admitted, was properly shown. It was pleaded that precautions other than those adopted should have been provided by the railroad company, and the failure so to do was one of the specifications of negligence. The obligation on defendant company to do more than ring a bell, sound a whistle, and place the ordinary cross arms with legend, if shown, was for the benefit of the public, of which plaintiff's decedent was a member. The trial judge very carefully restricted plaintiff's right to recover to proof of one or more of her specific charges of negligence.

Defendant complains also that special charge No. 7 did not properly associate the duty of defendant as to the speed with

which it could properly operate its train where the accident occurred with other physical conditions which, under the law, it must consider.

The trial judge followed closely the pronouncements in *New York, Chicago & St. Louis Rd. Co.* v. *Kistler,* 66 Ohio St., 326, 64 N. E., 130, the third paragraph of the syllabus, and opinion at page 334; *Hicks, Admr.,* v. *Baltimore & Ohio Rd. Co.,* 160 Ohio St., 307, 116 N. E. (2d), 307; and *Gibbons* v. *Baltimore & Ohio Rd. Co.,* 92 Ohio App., 87, 109 N. E. (2d), 511, the first paragraph of the syllabus. The charge is not incomplete or inexact in the particulars in which it is challenged. The speed of the locomotive was established at 67 miles per hour, and the condition and the objects on and about the crossing, for which the defendant company was responsible and which plaintiff pleaded increased the hazard and required further protection were developed in the record, and the trial judge incorporated all these factors in his general charge, as well as in plaintiff's special charge No. 7.

Assignments Nos. 3, 4, 5 and 6 assert prejudicial error in the giving before argument of plaintiff's special charges Nos. 1, 2, 3 and 4.

Special Charge No. 1:

"The duty of a traveler approaching a railroad grade crossing is to look and listen for trains while in a place of safety, before going upon the crossing and at a point where such observation would be effective for his safety."

Special Charge No. 2:

"Neither negligence nor contributory negligence is presumed. On the contrary there is a presumption that a decedent, prior to her death, caused by a collision of a train with the vehicle in which she was riding as a guest, was acting as a person of ordinary care and prudence would have acted under the same or similar circumstances.

"Ordinarily, it is not the province or even proper for a guest to interfere with the driver until she discovers that the driver is unskillful, reckless, or has failed to perceive impending danger."

Special Charge No. 3:

"I charge you that under the law of Ohio a person riding as

a guest passenger in an automobile does not assume the responsibilities of the driver and the driver's negligence may not be imputed to her. A passenger is required to use her faculties of sight and hearing for her own protection and at a railroad crossing is required to exercise that care for her own safety which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances and that test should be applied in an action involving a collision between an automobile in which she was a passenger and a railroad train at a grade crossing.''

As to Special Charge No. 4, the first paragraph and the first sentence of the charge are not in question. The part to which objection is urged reads:

''And, if you find from the evidence that the engineer, or other person operating the defendant's locomotive, failed to blow the engine whistle and to ring the bell as required by statute and that such failure was the proximate cause of the death of Mamie Hollingsworth, to which she did not proximately contribute by any *act* of her own, then your verdict must be for the plaintiff.'' (Emphasis ours.)

Appellant contends that charges Nos. 1 and 3 are erroneous in that they do not include the full duty enjoined upon decedent as she approached and went upon the crossing. *Woolley* v. *Cincinnati, Hamilton & Dayton Ry. Co.*, 90 Ohio St., 387, 108 N. E., 1135, is cited, wherein it is held that it was prejudicial error for the trial judge to refuse to give a charge that the plaintiff's duty to exercise reasonable care to discover an approaching train continued until he was over the crossing and the danger was past. The charge continued ''and if you find he made no further effort to ascertain whether a train was approaching than to stop and look, when sixty feet from the main track, he was guilty of negligence contributing to his injuries and can not recover.'' Manifestly, the propositions tied together in this charge made it correct as applied to the facts in the case. It should also be noted that in the *Woolley* case the plaintiff was the driver of the car. Defendant also cites *Pennsylvania Rd. Co.* v. *Rusynik,* 117 Ohio St., 530, 159 N. E., 826; and *Lang, Admx.,* v. *Pennsylvania Rd. Co.,* 59 Ohio App., 345, 18 N. E. (2d), 271, at page 352; as to the time when a traveler

approaching a railroad track should exercise his senses to apprehend danger. Neither case announces any rule essentially different than that which the trial judge gave to the jury in this case which is well supported by the authorities. *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714.

Defendant's Special Charge No. 16 is substantially the same as plaintiff's No. 1. *Pennsylvania Rd. Co.* .v. *Rusynik, supra.*

The objection to charge No. 3, other than those also urged as to charges Nos. 1 and 2, is that it is but an abstract proposition of law. The first sentence, that negligence of the driver of the automobile may not be imputed to the decedent, was proper and appropriate. The second sentence requires application only of terms well defined to the jury in other charges and in the general instructions.

Charge No. 2 is taken in part from the fifth paragraph of the syllabus and in part from the opinion in *Bush, Admr.,* v. *Harvey Transfer Co.,* 146 Ohio St., 657, 67 N. E. (2d), 851. There is no question whatever about the first paragraph and we see no prejudice in the language of the second paragraph.

Defendant insists that charge No. 4, near the end thereof, in the language, "to which she did not proximately contribute by any *act* of her own," is inadequate and incomplete in that it incorporates only an act, something affirmative, on the part of decedent to constitute negligence and omits that aspect of negligence in the failure of decedent to act.

It is doubtful if the charge, as framed, could have been misunderstood by the jury. Had the words, "of negligence," followed the word, "act," it would have met the objection. This term was employed in plaintiff's charges Nos. 5 and 7. It probably was so understood.

Charge No. 8 is not objectionable.

However, there is another and compelling reason why the charge, assuming that it was incomplete, could not have prejudiced defendant. The trial judge in giving the special charges to the jury did not inform them at whose request they were given. They were arranged according to their subject matter and not in the order in which presented by counsel. Defendant's special charge No. 17 spells out, in detail, all the obliga-

tions devolving upon decedent which it is contended are missing from plaintiff's charge No. 4. The incompleteness of the charge, if any, was cured by the other special charges which were with the jury before argument. *Wymer-Harris Construction Co.* v. *Glass, Admx.,* 122 Ohio St., 398, 171 N. E., 857; *Deckant* v. *City of Cleveland,* 155 Ohio St., 498, 97 N. E. (2d), 84.

Contributory negligence was pleaded. Counsel for plaintiff by submitting her special charges agreed, and the court recognized in the general charge, that contributory negligence was presented by the evidence. A special interrogatory was submitted, and the jury answered that decedent was not negligent.

We have difficulty in finding any evidence upon which contributory negligence was suggested. All the occupants of the automobile in which decedent was riding when it was struck were killed. What she did or failed to do as she approached the crossing was not and could not be developed because of the very nature of the circumstances under which she met her death. A presumption attended that she was not negligent, that she exercised ordinary care for her safety, that she looked, and that if a warning was required she warned her driver. To permit the jury to consider and pass upon this question required pure conjecture. Plaintiff, having admitted that contributory negligence was an issue, is bound by her concession, but it is doubtful, if contributory negligence is not in the case, if defendant could be prejudiced even if some part of plaintiff's charges on the subject were incomplete. Notwithstanding our view respecting contributory negligence as an issue in the case, we have passed upon the errors assigned as though it was an issue.

Assignment No. 10 is that the court erred in refusing to charge the doctrine of assumed risk.

We doubt whether assumed risk is pleaded. If it is, the doctrine is not applicable to the facts in this case. Defendant cites *Masters* v. *New York Central Rd. Co.,* 147 Ohio St., 293, 301, 70 N. E. (2d), 898; *Porter, an Infant,* v. *Toledo Terminal Rd. Co.,* 152 Ohio St., 463, 90 N. E. (2d), 142; *Erie Rd. Co.* v. *McCormick, Admx.,* 69 Ohio St., 45, 68 N. E., 571; *Continental Baking Co.* v. *Pennsylvania Rd. Co.,* 87 Ohio App., 505, 96 N. E.

(2d), 258; *Detroit, Toledo & Ironton Rd.* v. *Yeley,* 54 Ohio Law Abs., 497; *Price* v. *New York Central System,* 58 Ohio Law Abs., 305. In the first three cases cited, where the doctrine was held applicable, the fact pattern is so different as to afford no precedent here. All the other cited cases treat of contributory negligence as an issue, and not assumed risk.

The twelfth and thirteenth assignments assert that the trial judge erred in overruling defendant's motion for a new trial, on the ground that the verdict was returned under the influence of passion and prejudice; for errors of law in the trial of the case; and because the verdict is manifestly against the weight of the evidence. The court held that the verdict was excessive and reduced it by $4,000. There are four next of kin, in like relation to the decedent, who share in the proportion of $3,000 each in the judgment. Nothing appears in the record which requires the finding that the jury acted with passion or prejudice; we cannot say that the verdict as reduced is excessive or that it is contrary to the manifest weight of the evidence.

We find no error assigned well made.

The judgment is, therefore, affirmed.

*Judgment affirmed.*

WISEMAN and CRAWFORD, JJ., concur.